**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

2019 MAR 11  A 7:44

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

|  |  |
|---|---|
| **MICHAEL A. MCGUIRE,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| *v.* | ) |
| | ) |
| | ) |
| **STEVEN T. MARSHALL,** in his | ) |
| Official Capacity as Attorney General | )   **Case No. 2:19-cv-174** |
| of the State of Alabama, **HAL TAYLOR,** | ) |
| in his Official Capacity as Secretary of the | ) |
| Alabama Law Enforcement Agency and, | ) |
| Montgomery, Alabama Police Department | ) |
| Detective, **JEREMY JONES,** in his | ) |
| Individual Capacity, | ) |
| | ) |
| *Defendants.* | ) |

## COMPLAINT

**COMES NOW**, Plaintiff Michael A. McGuire, and bringing a challenge to the

Alabama Sex Offender Registration and Community Notification Act, Ala. Code § 15-

20A-1 *et seq.* (2011, as amended) ("ASORCNA").   Plaintiff contends that the statute

violates the United States Constitution.

## PRELIMINARY STATEMENT

"Alabama can prosecute sex offenses to the full extent of the law. It can also act to

protect its citizens from recidivist sex offenders. But the State denies that ASORCNA is

designed to "punish" offenders. [But] once a person serves his full sentence, he enjoys the

full protection of the Constitution. Sex offenders are not second-class citizens, and anyone

1

who thinks otherwise would do well to remember Thomas Paine's wisdom: "He that would make his own liberty secure, must guard even his enemy from oppression; for if he violates this duty, he establishes a precedent that will reach to himself." *Doe #1 et al, v. Steven T. Marshall et al.*, Case No. 2:15-cv-00606 (February 11, 2019, M.D. Ala. Watkins, C.J.) ("*Doe v. Marshall*"). This Honorable Court's conclusions in *Doe v. Marshall* cannot be reiterated with enough frequency—its thoughtfulness cannot be gainsaid.

For nearly a decade, the Plaintiff in this matter and thousands who are similarly situated, have been treated as second-class citizens; indeed, the State has relegated them to the status of moral lepers. Plaintiff previously brought a successful challenge to some of the ASORCNA's most debilitating restrictions and requirements. *See McGuire v. Strange*, 83 F. Supp. 3d 1231 (2015 M.D. Ala. Watkins, C.J.) ("*McGuire I*"). And similarly situated registrants have recently experienced success in challenging additional onerous requirements of the statute. *See Doe v. Marshall*, Case No. 2:15-cv-00606 (2015).

Alabama has brazenly and boldly enacted draconian provisions of ASORCNA which restrict and proscribe fundamental and important constitutional rights of so-called "sex offenders." Out of clear political expediency, and avoidance of challengers' hot pursuit of the statute's constitutional infirmities, the Alabama legislature has recently revised, expanded and revised its expansions to the "most comprehensive debilitating sex offender scheme in the land." *McGuire I*, 83 F. Supp. 3d at 1236; *see also Doe v. Marshall*, doc. 125 at 4 (describing 2017 revisions to ASORCNA during ongoing litigation as a "far-reaching rewrite."). Under the guise of the truly compelling *stated* interest, "protecting the public and especially children" from dangerous sex offenders, the State has thus far,

2

accomplished its true goal—to punish and oppress an overly-broad class of human beings, thousands who have never harmed minors, with life-controlling, debilitating restrictions and requirements more expansive than have ever been enacted in the history of United States.

As they exact their punishment upon thousands who pose no threat to our community, the State relies on misguided assumptions; that, (1) registrants of ASORCNA *are* second-class citizens; (2) registrants do not possess the ability to fight them back; and, (3) no one will continuously advocate for the rights of the registrants unjustly captured by the State via the statute. The State of Alabama's assumptions are patently wrong. Plaintiff's fight to restore his life and the lives of thousands of free, fellow Americans continues.

## JURISDICTION and VENUE

1.  Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs seek redress for the deprivation of rights secured by the U.S. Constitution. Plaintiffs' federal claims are brought pursuant to 42 U.S.C. § 1983.

2.  Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Court.

3.  The Court make resolve any claims involving state law pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in the Middle District of Alabama pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

3

### The Plaintiff

5.   **Michael A. McGuire** is a resident of the Middle District of Alabama who is over the age of 19. He is well known by this Court as he was the Plaintiff in *McGuire v. Strange*, 83 F. Supp. 3d 1231. He is a registrant of ASORCNA and is an appropriate plaintiff in a case challenging the state statute on the grounds contained herein.

### The Defendants

6.   **Defendant Steven T. Marshall** is the current Attorney General, an officer or agent of the State of Alabama. He is sued in his official capacity. The Attorney General's primary office is located in the Middle District of Alabama and he is an appropriate defendant in a case challenging the constitutionality of a state statute.

7.   **Defendant Hal Taylor** is the current Secretary of the Alabama Law Enforcement Agency. Defendant Taylor's primary office is in the Middle District of Alabama. He is sued in his official capacity and is an appropriate defendant in a case challenging the constitutionality of a state statute.

### FACUTAL ALLEGATIONS

8.   "Not all sex crimes are the same. Nor are all offenders the same. [O]ne can classify sex offenders based on their risk of committing another sex offense ("sexual recidivism"). Some offenders have a low risk of sexual recidivism; others have a medium or a high risk. Also, the older someone gets, and the longer they go without committing a new crime, the less likely they are to reoffend. At a certain point, most individuals convicted of a sexual offense will be no more likely to commit

4

another sexual offense than the rate of spontaneous 'out-of-the-blue' sexual offenses in the general population. Low-risk offenders cross that threshold upon release from prison. Medium-risk offenders cross it ten to fifteen years later. Even high-risk offenders, after twenty years offense-free, pose no more of a threat to the public than does the average man walking down the street." *Doe v. Marshall*, Op., doc. 164 at 28-29. This Court's findings serve as authority for this matter.

**ASORCNA, Ala. Code § 15-20A-1 *et seq*. (2011)(as amended, 2017)**

9. ASORCNA inserts the State into various aspects of registrants' daily lives. The current version of ASORCNA applies to adult offenders convicted of any of thirty-three infractions designated as sex offenses under Alabama law. Ala. Code § 15-20A-5.

10. It also makes its provisions applicable to any adult offender convicted in another jurisdiction of a crime that, "if it had been committed in [Alabama] under the current provisions of law, would constitute" an enumerated offense. *Id.* § 15-20A-5(35).

11. The statute applies retroactively such that it sweeps offenders under its control regardless of when the conviction occurred or the duty to register arose. *Id.* § 15-20A-3(a).

5

12. Unless they are relieved from its requirements due to medical need or through one of the Act's other narrow exceptions,[1] qualifying offenders are subject to the statute's requirements for life. *Id.* § 15-20A-3(b).

13. A sex offender must register with certain law enforcement agencies upon (1) release from incarceration (or at the time of conviction if not incarcerated), or (2) upon entering the state. *Id.* § 15-20A-10.

14. ASORCNA requires an in-person appearance before local law enforcement of the county in which the sex offender resides, accepts employment, or attends school. *Id.*

15. Registrants of the statute who live in cities and towns with police departments ("in-town registrants"), must register with both city and county law enforcement at minimum, quarterly.

16. Registrants who live within the county in towns with not police departments ("county-only registrants"), must register with the county sheriff's office only at minimum, quarterly.

17. When registering, sex offenders must provide law enforcement with their residential address, the name and address of their employer and/or the school they attend, the license number and registration for any vehicle they own, and all telephone numbers they use. *Id.* § 15-20A-7(a)(4)–(8).

---

[1] For example, ASORCNA offers some limited relief for juvenile offenders, Ala. Code § 15-20A-28, and for those offenders whose crimes were a result of their victim's age, if the offender was less than five years older than his victim, *id.* § 15-20A-24. Plaintiff in this case may never seek relief from the statute's most debilitating restrictions and requirements.

18. Registrants have an enduring obligation to update their registration, in person, at the time of any change in residence, employment, or educational enrollment. *Id.* § 15-20A-10(b), (c).

19. All updates must be made "immediately," which the Act defines as within three days. *Id.* § 15-20A-4(9).

20. ASORCNA further requires homeless registrants to report in person to a single local law enforcement on a weekly basis. *Id.* § 15-20A-12(b). Combined with quarterly reporting, homeless registrants are required to register a minimum of fifty-six (56) times annually.

21. ASORCNA registrants are required to pay a $10 fee at each registration event, including each homeless registration events. Ala. Code § 15-20A-22(a). Registrants are also required to pay a $10 fee each time they terminate residence or establish a new residence. *Id.* -22(b).

22. "If, at the time of registration, the adult sex offender is unable to pay the registration fee, the registering agency may require the adult sex offender to pay the fee in installments not to exceed 90 days. The registering agency shall waive the registration fee if the adult sex offender has an order from the court declaring his or her indigence. In the event the adult sex offender is determined to be indigent, a periodic review of the adult sex offender's indigent status shall be conducted by the court to determine if the offender is no longer indigent. Further, if the offender is determined to be indigent by the sentencing court, nothing in this chapter shall

prohibit the offender from being placed on a payment plan where the entire fee is collected in total." *Id.* -22(c).

23. Any person who willfully fails to pay the required registration fee at the time of registration, or at the time at which the installment payment is due, shall be guilty of a Class B misdemeanor. Upon a second or subsequent conviction for willful failure to pay the required registration fee, the adult sex offender shall be guilty of a Class A misdemeanor. *Id.* -22(e).

24. Law enforcement uses collected registrant information to establish a registry, which it makes available to the public. *Id.* § 15-20A-8.

25. ASORCNA also requires local law enforcement to notify the community of a sex offender's presence by distributing flyers to nearby residents. *Id.* § 15-20A-21.

26. If a registrant intends to leave his county of residence for a period of three or more consecutive days, he must complete a travel permit request and provide the details of his travel plans. *Id.* § 15-20A-15.

27. Registrants who intend to travel out of the country are required to complete a travel permit require twenty-one (21) days prior to the date of travel. *Id.* -15(c). The registrant information is forwarded to the United States Marshals Service. *Id.*

**Residency Restrictions**

28. ASORCNA strictly limits the areas in which sex offenders may live and work. The residency provision proscribes the establishment or maintenance of a residence

within 2,000 feet of a school, childcare facility, or resident camp.[2] *Id.* § 15-20A-11(a).

29. ASORCNA also prohibits sex offenders from establishing or maintaining a residence within 2,000 feet of the property on which a victim's immediate family members reside. *Id.* § 15-20A-11(b).

30. The 2,000-foot exclusion zone is measured in a straight line from nearest property line to nearest property line. *Id.* § 15-20A-11(h).

31. This Court found as fact that, conservatively, 80 percent of the city's housing stock was not ASORCNA-compliant, thereby creating a large, residential "zone of exclusion." The City of Montgomery has over 96,000 parcels of real estate. *McGuire I*, 83 F. Supp. 3d at 1241 (M.D. Ala. 2015 Watkins, C.J.)(*citing* Plaintiff expert's testimony.).

32. Conservatively, 76.8 percent of the parcels in Montgomery, Alabama are off limits to people subject to ASORCNA and 80 percent of where the people are actually living in the city is off limits to people subject to the statute. *Id.*

33. In addition to imposing geographical limitations on living arrangements, ASORCNA prevents sex offenders from residing with certain minor children (the "minor-cohabitation rule"). No sex offender may "reside or conduct an overnight visit with a minor." *Id.* § 15-20A-11(d).

---

[2] "[A] resident camp facility includes any place, area, parcel, or tract of land which contains permanent or semi-permanent facilities for sleeping owned by a business, church, or nonprofit organization used primarily for educational, recreational, or religious purposes for minors and the location of the resident camp has been provided to local law enforcement. Resident camp does not include a private residence, farm, or hunting or fishing camp." Ala. Code § 15-20A-11(a).

34. The Act defines "overnight visit" as "[a]ny presence between the hours of 10:30 p.m. and 6:00 a.m." *Id.* § 15-20A-4(14). The minor-cohabitation rule generally does not apply if the sex offender is the parent, grandparent, sibling, stepparent, or stepsibling of the minor. *Id.* § 15-20A-11(d). Under certain circumstances in which the sex offender's victim was a child, however, even these familial exceptions do not apply. *Id.* § 15-20A-11(d)(1)–(5).

35. It takes four statutory cross-references to the meaning of "residence".[3] "Residence" is defined as "[a] fixed residence . . . or other place where the person resides, regardless of whether the person declares or characterizes such place as a residence." *Id.* § 15-20A-4(21).

36. ASORCNA then defines the operative term "reside" as "be[ing] habitually or systematically present at a place," a matter which "shall be determined by the totality of the circumstances." *Id.* § 15-20A-4(20).

---

[3] Set out in full, the four relevant provisions read as follows:

(6) FIXED RESIDENCE. A building or structure, having a physical address or street number, that provides shelter in which a person resides.

. . . .

(14) OVERNIGHT VISIT. Any presence between the hours of 10:30 p.m. and 6:00 a.m.

. . .

(20) RESIDE. To be habitually or systematically present at a place. Whether a person is residing at a place shall be determined by the totality of the circumstances, including the amount of time the person spends at the place and the nature of the person's conduct at the place. The term reside includes, but is not limited to, spending more than four hours a day at the place on three or more consecutive days; spending more than four hours a day at the place on 10 or more aggregate days during a calendar month; or spending any amount of time at the place coupled with statements or actions that indicate an intent to live at the place or to remain at the place for the periods specified in this sentence. A person does not have to conduct an overnight visit to reside at a place.

(21) RESIDENCE. A fixed residence as defined by Section 15-20A-4 or other place where the person resides, regardless of whether the person declares or characterizes such place as a residence. Ala. Code § 15-20A-4.

37. In addition to the catch-all term, "reside", the Act specifies three circumstances under which a person resides at a place: first, if the person spends four hours there on three consecutive days; second, if the person spends four hours there on ten days out of a month; and third, if the person spends any length of time there and has indicated an intent to remain for the named periods of time. *Id.* These three circumstances, as the Act makes clear, are illustrations rather than limitations of the definition. *Id.*

38. Should a registrant fail to notify law enforcement or obtain a travel permit prior to "spend[ing] three or more consecutive days" away from his residence, he will be deemed to have changed residences and will be required to report the change to law enforcement. *Id.* §§ 15-20A-11(e)(2), 15-20A-10(e)(1).

39. These residency restrictions apply regardless of whether the sex offender's victim was a minor child.

40. As of August 1, 2017, ASORCNA offers registrants a safe harbor in the form of residential preapproval. *Id.* § 15-20A-11(g). Should law enforcement preapprove an address as ASORCNA compliant before a registrant moves in, his residence there will not violate the residential-exclusion rules. *Id.*

41. Registrants also may petition a state circuit court for relief based on terminal illness, permanent immobility, or other debilitating medical condition. *Id.* § 15-20A-23(a).

42. To grant this relief, the state **court must find that the petitioner does not pose a substantial risk of engaging in future sexual misconduct.** *Id.* § 15-20A-23(g). However, ASORCNA does not provide for individualized risk assessments. Yet,

11

the statute provides that "any court order altering, amending, waiving, or suspending sex offender registration and notification requirements, ... except as provided in [ASORCNA], **shall be null, void, and of no effect**. Ala. Code § 15-20A-43.

43. The employment provision, like the residency provision, imposes a geographical limitation on sex offender activity. No sex offender may "accept or maintain employment or a volunteer position" within 2,000 feet of a school or childcare facility. *Id.* § 15-20A-13(b).

44. Registrants also may not accept or maintain employment within 500 feet of a playground, park, or athletic facility with a principal purpose of serving children. *Id.* § 15-20A-13(c).

45. The exclusion zone is measured from nearest property line to nearest property line. *Id.* § 15-20A-13(h).

46. This provision further precludes sex offenders from working at any facility or organization that provides services primarily to children. *Id.* § 15-20A-13(a).

47. This Court has found as fact, that approximately 85 percent of jobs in the city of Montgomery, Alabama are barred to offenders (creating an employment "zone of exclusion"). *McGuire I*, 83 F. Supp. 3d at 1241 n. 7.

48. ASORCNA's employment restrictions apply regardless of whether the sex offender's victim was a minor child.

49. There are over 500 registrants of ASORCNA in Montgomery County, Alabama.

**Branded Identification Requirement**

50. ASORCNA requires all sex offenders to carry branded identification cards. Specifically, the statute provides that a sex offender must "obtain . . . and always have in his or her possession, a valid driver license or identification card issued by the Alabama State Law Enforcement Agency." *Id.* § 15-20A-18(a).

51. These registrant-specific driver's licenses must "bear[ ] a designation that enables law enforcement officers to identify the licensee as a sex offender." *Id.* § 15-20A-18(b), (c).

52. The Alabama Legislature delegated to the Secretary of the Alabama Law Enforcement Agency ("ALEA") the exclusive power "to promulgate any rules as are necessary to implement and enforce" the Act. *Id.* § 15-20A-44(c). The ALEA, in turn, has required the face of the identification cards to bear the inscription "CRIMINAL SEX OFFENDER" in bold, red letters. Registrants must also relinquish any other identification previously issued to them "by a state motor vehicle agency" that does not bear the sex offender inscription. *Id.* § 15-20A-18(d).

53. This Court held that ASORCNA's current branded identification requirements unconstitutionally compel speech of registrants of the statute. *Doe v. Marshall*, Op., doc. 164 at 15-22.

54. On February 11, 2019, this Court declared, "The branded-identification requirement in Alabama Code § 15-20A-18 is unconstitutional under the First Amendment of the United States Constitution to the extent that it has been applied by the State of Alabama." *Id.*, doc. 165 (Final judgement).

55. ASORCNA's branded identification requirements apply to all registrants, regardless of whether their victims were minors or children.

**Penalties for ASORCNA Violations**

56. ASORCNA's various duties and limitations are enforced under penalty of criminal prosecution. A violation of its requirements may constitute a Class C felony. *See, e.g.*, *id.* § 15-20A-11(i). The statute does impose a scienter requirement, however, such that registrants are only liable for knowing violations of any provision. *See id.*

### Plaintiff Michael A. McGuire

57. Plaintiff realleges the facts and allegations in paragraphs 1-57, supra.

58. Mr. McGuire is an adult registrant of ASORCNA who lives in the Middle District of Alabama.

59. In 1985, Mr. McGuire, while in his early 30's, was convicted in Colorado of sexual assault of his 30-year-old girlfriend. *McGuire I*, 83 F. Supp. 3d 1231, 1236.

60. McGuire is 64 years old.

61. After release from prison in about 1989, McGuire paroled to the Washington D.C. area, where he lived as a productive citizen working as a musician and cosmetologist. *Id.*

62. He was not required to register as a sex offender after serving his prison sentence and parole. *Id.*

63. Since completing his prison sentence and parole in about 1991, Mr. McGuire has not committed any unlawful offenses, including traffic violations.

64. Mr. McGuire returned to his hometown, Montgomery, Alabama to care for his ailing mother in 2010.

65. After establishing residency at his mother's home upon arrival to Montgomery, McGuire voluntarily visited the Montgomery Police Department to confirm his belief that he was not subject to Alabama sex offender law. *Id*.

66. The Montgomery police department immediately required Mr. McGuire to register under Alabama sex offender law and gave him five days, under felony threat, to move from his mother's "non-compliant" home pursuant to sex offender residency restrictions. *Id*.

67. Since 2012, McGuire, his family members and neighbors have experienced unannounced appearances at and near Mr. McGuire's residence and have been subject to interrogation by local and State law enforcement agents. These unannounced appearances and interrogations include those of Montgomery Police Department officers Jeremy Bolton and Jeremy Jones. *See Doe v. Marshall*, doc. 148-4 at 2.

68. Mr. McGuire has learned law enforcement personnel has shown neighbors photographs of him and inquired about his living arrangements and presence at the residence. He is afraid to answer the door of his residence because of law enforcement intimidation and harassment. *See e.g. Doe v. Marshall*, doc. 148-7.

69. No fewer than three times Since June 2017, Montgomery Police officers, including Jeremy Jones, have appeared unannounced, and without warrants at homes the officers believed to be and, his actual current residence. Jones has knocked on

McGuire's doors and windows and entered through closed fences into his backyard, banging on back windows of his home. Mr. McGuire has recorded accounts of the unannounced, illegal officer activity at his residence. *See Doe v. Marshall*, doc. 148-4 at 4-5.

**Mr. McGuire's experiences as an ASORCNA registrant since August 1, 2017**

70. Since August 1, 2017, Mr. McGuire has suffered new injuries under ASORCNA. The new injuries confer standing upon him based on Eleventh Circuit precedent. *See Hillcrest Prop., LLC v. Pasco Cty.*, 754 F.3d 1279, 1283 (11th Cir. 2014). His new injuries include, but are not limited to the following:

71. McGuire is currently prohibited from residing within 2,000 feet of locations which primarily serve children. Ala. Code § 15-20A-11.

72. Mr. McGuire's income is less than $13,000 per year. Because he is the sole income source, he pays $550 per month in rent for the home in which his wife lives.

73. McGuire's fixed and minimal supplemental income does not afford him the opportunity to secure one of the few compliant homes available in his city.

74. Because the State retroactively applied ASORCNA's 2017 revised residential zones of exclusion to Mr. McGuire, he is not allowed to live with his wife in the only safe, habitable and family-subsidized home they could afford because the home is one of the over 80 percent of homes which are off-limits per ASORCNA.

75. Mr. McGuire has been subject to states of homelessness and, although he currently has an ASORCNA compliant home to live in, he has been deemed to be homeless by this Court. *McGuire I*, doc. 360 at 2; doc. 365 at 11-12 n. 11.

76. A kind neighbor allows Mr. McGuire to temporarily live in her home to prevent his homelessness for a while.

77. Until recently, the neighbor allowed another ASORCNA registrant to rent a room at the residence where McGuire resides.

78. Mr. McGuire's current residence is an ASORCNA-compliant address *See Doe v. Marshall*, doc. 148-4 at 1. Until recently, he paid the primary tenant of his residence $150 per month to sub-lease a room.

79. Mr. McGuire has a brother who lives in an ASORCNA compliant home, but Mr. McGuire is limited to the time he may spend at his brother's home and prohibited from spending a single night with his brother and other family who live there because his brother has minor children who live in the home. *See McGuire I*, 83 F. Supp. 3d at 1260.

80. Since August 2017, Mr. McGuire has limited the time he has spent at his brother's home and has refrained from all overnight visits at his brother's home.

81. ASORCNA prohibits all registrants from a single overnight stay and from spending important extended time with certain minor relatives including nieces and nephews. Ala. Code § 15-20A-11(d); 15-20A-4(13). Mr. McGuire's time spent with his nieces, nephews and other minor family members is chilled or proscribed as a result of ASORCNA's minor cohabitation rule. *McGuire I* at 1260.

82. Mr. McGuire's brother, sister-in-law and nieces (10 and 12 years of age) who live in the ASORCNA-compliant home, would gladly have him live with them.

Because of ASORCNA's proscriptions on minor cohabitation, Mr. McGuire cannot live in the home with his brother, sister-in-law and minor nieces.

83. McGuire has at least ten (10) family members who wish to have him present for family gatherings, including overnight visits. Most those family members live in homes which are restricted by ASORCNA's zones of exclusion.

84. Although ASORCNA provides that registrants may spend the night at *any* residence, on nine (9) non-consecutive nights, Ala. Code § 15-20A-11(x), zones of exclusion notwithstanding, Mr. McGuire, since August 1, 2017 is prohibited from living permanently with his wife at her address. *See McGuire I* at 1264 ("[N]o one [from the State] has attempted to rationalize why, in view of the public safety rationale, Mr. McGuire and married registrants like him may spend two consecutive nights, not to exceed nine a month, in a restricted residence with a spouse.").

85. In the past and, on several days during the month, Mr. McGuire visited his wife and family members. His wife currently helps to care for him by ensuring he eats the proper food and takes his medication in a proper manner. He once visited other family members in their ASORCNA non-compliant homes on a regular basis for dinner, movies and other family bonding activities.

86. Since August 2017, Mr. McGuire has refrained from regular visits with his wife and family because he fears those regular visits, if determined by law enforcement to be "habitual" or "systematic," will subject him to felony penalty for violations of ASORCNA's recently enacted (2017) residential zones of exclusion.

87. Mr. McGuire is a musician. He currently uses his musical talents to supplement his fixed income, earning up to $125 per musical performance. *See e.g. McGuire I* at 1242.

88. McGuire currently receives calls each week requesting that he perform at various locations within Montgomery, Alabama.

89. Nearly all of Mr. McGuire's current prospective employment opportunities are night performances on Thursday through Sunday, when the vast majority, if not all public and private schools, daycares and other childcare facilities are closed.

90. Including over recent weeks in 2019, Mr. McGuire has turned down opportunities to supplement his income by engaging in musical performances because ASORCNA's employment restrictions, Ala. Code § 15-20A-13, prohibit him from working within 2,000 feet of any school or daycare.

91. McGuire turned down these recent musical employment opportunities because he has no way of determining whether ASORCNA's employment zones of exclusion prohibit his prospective employment locations.

92. McGuire anticipates he will receive weekly calls on an ongoing basis for musical performance opportunities. He will continue to turn down employment opportunities if he is unaware of whether the locations of his performances are unlawful.

93. McGuire sometimes volunteers his musical services when the venues are small and pay for his performance is not likely. McGuire volunteers his services because

performing music is the way he expresses himself. Performing for others, even if he does so at no charge, is enjoyable and comforting to him.

94. McGuire turns down many of his free musical performances because, under felony penalty, he has no idea if the locations at which he may be asked to perform, rest within ASORCNA's employment zones of exclusion. Ala. Code § 15-20A-13.

95. McGuire is often presented with other performance opportunities such as paid or volunteer work in public parks or at city-sanctioned annual festivals, but is unsure whether these *ad hoc*, intermittent performances subject him to felony penalty pursuant to ASORCNA's employment exclusion zones.

96. ASORCNA provides for no way for McGuire to seek preapproval for his prospective employment and volunteer opportunities. *Doe v. Marshall*, doc. 164 at 45.

97. Even if there were an employment preapproval process, McGuire would be prevented from accepting most of his prospective employment because local law enforcement offices in his city allow ASORCNA registrants to seek and provide information to law enforcement between the hours of 8 a.m. and 12 p.m., Monday through Friday only. These temporal law enforcement limitations do not provide time for McGuire to inquire about potential employment on most Fridays and, never on Saturday and Sunday, if such an employment validation process existed.

98. Mr. McGuire recently stated, "But for the grace of God, I would likely be in prison or dead due to the constant pressure that comes with complying with [ASORCNA's] restrictions on every part of my life."

99. Mr. McGuire attends church with his brother, sister in-law and nieces.

100. Because of ASORCNA's residential zones of exclusion, Mr. McGuire fears "establishing a residence" at the church if he habitually or systematically attends because the church rests within the exclusion zones, has a children's ministry and, offers daycare and childcare services.

101. Because of Mr. McGuire's religious faith and his self-described "epic" life story of redemption, he feels compelled to serve in church. He has the talent and desire to and, wishes to participate in the church's music and other ministries.

102. Mr. McGuire limits the time he attends church because of ASORCNA's residential zones of exclusion. He refrains from attending and participating bible study, weekly men's ministry and rehearsals with the music ministry because those church activities are held over several days during each week and over several hours, individually and combined.

103. Because of ASORCNA's employment zones of exclusion, Mr. McGuire is prohibited from being employed in any ministerial capacity or volunteering his musical talent as ministry work and in service of the "higher power" in which he believes.

104. The music and other ministries at the church Mr. McGuire attends and wishes to join, often travels across the city, state and inter-state to perform, fellowship and deliver on the church's mission at various religious functions.

105. Mr. McGuire's exercise of his religious beliefs is chilled or proscribed due to ASORCNA's residential and employment zones of exclusion as well as the statute's travel permit requirements.

106. Mr. McGuire's homelessness is imminent.

107. Because the other ASORCNA registrant who lived in McGuire's residence no longer resides at the address, McGuire has been informed that he will need to pay more for rent.

108. Mr. McGuire. cannot afford to pay more for rent at his current residence and maintain his necessary contribution to rent at his wife's residence.

109. McGuire's homelessness will require that he register weekly with city law enforcement in addition to his quarterly city and county law enforcement registration events.  He will be required to report in-person a minimum of fifty-six (56) times per year, not including immediate in-person reporting of any changes or updates to required registration information.  And Mr. McGuire will be required to pay a weekly fee of $10 at his homeless registration events.

110. Mr. McGuire enjoys traveling, particularly to beaches and oceanfront locations. Locations close to water sooth McGuire and has proved to be therapeutic for him.

111. Most of McGuire's leisurely travel occurs on an *ad hoc* basis, mostly over the weekend.  When he accumulates a few extra dollars from his musical performances, he likes to surprise his wife with weekend trips to waterfront location.

112. Since August 2017, McGuire has refrained from most travel, including his desire to travel spontaneously for extended weekend (3-day) trips in recent weeks,

because he is required to obtain a travel permit from law enforcement within three business days of such travel.  Travel pursuant to his typical Saturday through Monday plans are impossible for Mr. McGuire because he cannot obtain law enforcement permission over the weekends.

113. McGuire has a brother who has lived in Germany since the 1980's.  He wishes to travel to Europe to enjoy travel abroad and to visit his brother, but he refrains from traveling because of ASORCNA's 21-day preapproval travel requirements.

114. ASORCNA's travel permit requirements cause an extreme burden on Mr. McGuire's spontaneous domestic travel and his travel out of the country.

115. Mr. McGuire carries Alabama-issued identification which bears a designation which allows officers to identify him as a "sex offender." Ala. Code § 15-20A-18.

116. Mr. McGuire illustrated how the required red lettering on his driver's license leads to shame and embarrassment in ordinary, everyday encounters with the public. *McGuire I*, 83 F. Supp. 3d at 1253.

117. Mr. McGuire has experienced recent humiliation with his branded identification. For example, on February 15, 2019, Mr. McGuire visited a local retailer to pick up items for his wife, as he does multiple times each week. During this and many recent encounters since August 1, 2017, when identification is required, Mr. McGuire was required to engage in the humiliating experience of presenting his ALEA identification, branded by the State with the inscription "CRIMINAL SEX OFFENDER" in bold red letters on its face. This identification is the only form Mr. McGuire carries that proves his identity and date of birth.

23

118. Mr. McGuire contends, "Over 30 years ago, I paid the price in full for the only crime I ever committed. I am not a threat to anyone. I should not have to carry *any* sex offender designation, let alone this disgusting, humiliating brand on my license for a single additional day."

119. On February 18, 2019, Mr. McGuire, through counsel, requested of General Counsel for ALEA that the State allow him to exchange his branded identification for one not inscribed with the offensive brand.

120. On February 20, 2019, General Counsel for ALEA denied McGuire's request to exchange his branded identification because he was not a named Plaintiff in *Doe v. Marshall. But see Doe v. Marshall*, doc. 164 at 16; *id.* doc 165 (holding that ASORCNA's branded identification unconstitutionally compels Plaintiffs' speech and striking the provisions as applied.).

121. On March 7, 2019, Mr. McGuire went to a local ALEA office where he usually renews his license and asked to exchange it for a non-branded one. His request was denied. He was told he was required to wait "90 days" to have his license exchanged.

122. For now, Mr. McGuire is required to register with both city and county law enforcement ("double registration") quarterly and pays $10 to each agency during registration events.

123. When Mr. McGuire is homeless, ASORCNA requires him to pay $10 to city law enforcement during his weekly registration events.

**Law Enforcement Treatment of Mr. McGuire**

24

124. Montgomery, Alabama police officers who have contact with Mr. McGuire contend that he is not a "plain" or a normal citizen for the sole reason that he is, according to them, a "sex offender." *Doe v. Marshall*, docs. 148-1 at 8; 148-2 at 11. These officers have harassed and interrogated McGuire at their office and at his home. *See e.g. Doe v. Marshall*, doc. 148-1 at 21.

125. On or about August 24, 2017, Mr. McGuire witnessed MPD officer Jeremy Jones arrived at his home. *See Doe v. Marshall*, doc. 148-4 at 3. On or about that date, officer Jones rang Mr. McGuire's doorbell and aggressively knocked several times on his front door. *Id.* Mr. McGuire did not answer his door. *Id.* Mr. McGuire then witnessed officer Jones proceed around side of his home, reappearing in his back yard through a closed gate as Mr. McGuire watched, undetected by Jones. McGuire witnessed Jones knock aggressively on his back doors and bedroom windows while Jones was in the back yard of his home. *Id.* at 3-4. This experience left Mr. McGuire afraid and caused him severe emotional distress. *Id.* at 3-4.

126. On or about September 1, 2017, MPD officer Jones presented to McGuire's residence for a "home check" and demanded that McGuire show mail or clothing inside the residence as proof that McGuire resided at the home. *Id.* at 4. Upon McGuire's refusal to provide the required "proof," Jones informed McGuire that a warrant for his arrest would be executed. Mr. McGuire believed his arrest was imminent. *Id.*

127. McGuire suffers from a medical condition. With the help of his medication regiment, McGuire is normally calm, soft spoken and as cognitively functional as most citizens.

128. Because of Jones' September 1, 2017 threat however, Mr. McGuire fears that at any moment, he will be arrested, jailed and imprisoned. *Id*. at 4. Because of Jones' actions, Mr. McGuire suffered extreme emotional trauma and currently experiences daily fear and severe emotional distress, which is exacerbated by his pre-existing medical condition. *Id*. at 4-5

129. On behalf of McGuire, his counsel noticed the Montgomery Alabama city attorney regarding the illegal activity of MPD officer Jones; requested that MPD cease the activity; and, warned of McGuire's potential Fourth Amendment claims. *See id.*, doc. 148-8. The city attorney ignored McGuire counsel's notice and requests. *Id*.

130. There are thousands of ASORCNA registrants like Mr. McGuire, who since August 1, 2017, suffer daily injuries due to ASORCNA's debilitating restrictions and requirements, and who may never even seek relief from the statute.

**John Doe # 7**

131. Plaintiff realleges the facts and allegations set forth in paragraphs 1-130 above.

132. John Doe # 7 is an adult resident who lives in the Middle District of Alabama and is currently in Chilton County jail.

133. Doe 7 served as Plaintiff in *Doe # 1 et al., v. Marshall et al.*, 2:15-cv-00606-WKW.

**Chilton County Investigator Derrick Bone's Ongoing, Illegal Mistreatment of Doe 7**

134. Investigator Derrick Bone serves as a Deputy Sheriff employed with the Chilton County, Alabama Sheriff's Office today. His "tactics" used while enforcing ASORCNA's residential zones of exclusion have been detailed and are unlawful. *Doe v. Marshall*, doc. 138 ¶¶ 164-196.

135. Investigator Bone's unlawful enforcement of ASORCNA's residential zones of exclusion and reporting provisions continues to this day and, according to Investigator Bone, he plans to continue his enforcement tactics for the foreseeable future. *See Doe v. Marshall,* Doc. 148-3, Bone Dep. pp. 71-72, 115-118.

136. The power Bone assumes based on his understanding of ASORCNA underpins his continued harassment, doggedness and otherwise unreasonable and unlawful mistreatment of ASORCNA registrants, including Mr. Doe # 7.

137. In a three-week span between May 22 and June 13, 2018, Investigator Bone has again, caused multiple arrests and jailing; charging Doe 7 and others with violations of § 15-20A-11 and other felonies and misdemeanors. *Doe v. Marshall,* doc. 148-9 (Bone's warrants, arrests reports); *see also id.* doc. 138 ¶¶ 168-182 (detailing Bone's tactics which resulted in a 2015 arrest and conviction of Doe 7).

138. Bone's most recent, multiple arrests of Mr. Doe # 7 are eerily similar to the tactics he employed to arrest him in 2015.

**Bone's May 22, 2018 arrest of Mr. Doe # 7**

139. At approximately 9:15 p.m. on May 22, Chilton County deputy sheriffs conducted a traffic stop[4] of Mr. Doe # 7, for a purported "equipment violation" they noticed on his vehicle. *Doe v. Marshall.* doc. 148-9 at 13.

140. A deputy learned from Investigator Bone that there was a warrant for Doe # 7's arrest and awaited Bone's arrival to the scene. *Id.*

141. After the traffic stop for the purported "equipment violation," Doe # 7 was handcuffed and placed in a law enforcement vehicle. *Id.*

142. While Doe # 7 was seized, his vehicle was searched and the officers purportedly found drug paraphernalia and illegal substances. *Id.*

143. Mr. Doe # 7 was transported to jail and subsequently charged with multiple counts, including violations[5] of § 15-20A-11(e)(2) and § 15-20A-10(b)-(c). *See id.* at 1, 3, 9, 19, 22, 25, 28.

144. Notably, Detective Bone's reasons for issuing the May 22 warrant for Doe 7's arrest was, he apparently determined Doe # 7 to be illegally residing with his friend based on Bone's momentary "observation" of Doe 7 standing in his friend's yard on April 17; briefly observing Doe 7's vehicle at the same residence on April 18 and 19; and, Bone's or fellow Chilton County deputies' inability to make contact

---

[4] Mr. Doe # 7 has for years, driven his bright-red vehicle. The vehicle is known to Detective Bone. *Doe v. Marshall,* doc. 148-3, Bone Dep. p. 17 ln. 1-2. Interestingly, after the May 22 events had unfolded, CCSO deputies issued Doe # 7 a traffic citation for an "open container" in his vehicle. Doe # 7 was never issued a traffic citation for the unidentified "equipment violation."

[5] Bone's incident report indicates he arrested Doe 7 for "fail[ure] to spend three consecutive nights at his registered address and fail[ure] to notify the Chilton County Sheriff's Office of another address." *See id.*, doc. 148-9 at 7-8 (Bone's April 24 incident report).

with Doe # 7 during two-to-three-minute, late-night home compliance searches of Doe # 7's residence over the same three-day span. *See id.* doc. 148-9 at 7-8.

145. Bone admitted to having no independent knowledge of Doe 7 illegally residing away from his residence; no knowledge of how much time was spent at his friend's home; and, no knowledge of whether Doe 7 was at his registered address during any time, other than the times Bone conducted his two-to-three-minute home compliance checks on April 17, 18 and 19. *See id.*, doc. 148-3, Bone Dep. pp. 20-22.

## Bone's June 13, 2018 arrest of Mr. Doe # 7

146. On June 13, 2018, Investigator Bone, without a search warrant, unannounced and uninvited by the resident of the address presented himself late at night to an address he purportedly believed to be the residence in which Doe 7 was "residing." *Id.*, doc. 148-3, Bone Dep. p. 22.

147. Investigator Bone knocked on the front door. *Id.* p. 33.  Mr. Doe # 7 answered the front door and was immediately arrested, handcuffed and placed in Bone's police vehicle. *Id.*; *see also id.*, doc. 148-10 at 1-2 (Affidavit of "D.A.", friend of Doe 7).

148. Bone testified that, after arresting Doe 7, he was "provided a written statement" from Doe 7's friend and sole resident of the home where Bone effected Doe 7's arrest. *See id.*, doc. 148-3, Bone Dep. p. 23-24; *but see id.,* doc. 148-10 at 2 (Doe 7's friend, stating that he cannot write.).  After obtaining a statement from Doe 7's friend, Bone transported Doe # 7 to jail. *Doe v. Marshall*, doc. 148-10 at 1-2.

149. Notably, on June 13, 2018, Doe # 7 was arrested and charged with, (1) violating §
     15-20A-10, failure to register the address he purportedly established at his friend's
     home in April, pursuant to an additional "outstanding" arrest warrant[6], issued but
     unexecuted on May 22, 2018; and, (2) an *additional* charge for violating § 15-20A-
     11[7] for purportedly residing at the same friend's home and, pursuant to a warrant[8]
     issued on *June 15*, 2018, two days *after* Doe # 7's arrest. *See id.* doc. 148-9 at 25-
     32.

**Investigator Bone's June 29, 2018 Deposition**

150. Testimony of Investigator Bone reveals his true motives; to harass, capture, arrest
     and imprison Mr. Doe # 7 and other registrants of ASORCNA based on his "wild-
     eyed" view that "sex offenders" are not "regular" citizens or human beings; that
     sex offenders are not worthy of the same constitutional protections as "regular"
     citizens. *See* doc. 148-3, Bone Dep. p. 39-41.

---

[6] Bone offers no reason as to why he arrested Doe 7 on May 22, but only executed one of
the May 22 warrants. Bone offered no reason why Doe 7 would not have been subject to a "jail
hold" for the second, "outstanding" warrant.

[7] As are the plaintiffs here, the Court may be curious as to why Investigator Bone would
arrive on June 13, without a search warrant or invitation, at what he purportedly believed to be
Doe # 7's April 2018-established residence with his friend; arrest Doe # 7 pursuant to the second,
unexecuted May 22 arrest warrant; and, in addition to charging Doe 7 for violating § 15-20A-10—
failure to register his friend's address purportedly established by Doe 7 in April—charge Doe 7 a
second time since May 22 for violating § 15-20A-11 because, in the days leading to and including
June 13, he was purportedly residing at the address which led to Bone's May 22 § 15-20A-11
arrest and charges against Doe # 7 in the first instance. Bone's dogged pursuit of Doe 7 simply
makes no sense.

[8] The warrant Bone executed on June 13, 2018 was initially issued on **June 15**, 2018.
Doc. 148-9 at 29-30.

151. Bone's testimony provides additional bases for invalidating ASORCNA's residential zones of exclusion, Ala. Code § 15-20A-11(a)-(i), under relevant *ex post facto* analyses.

152. Bone admitted that the May 22 warrant issued for Doe # 7's arrest was not based on any cause, probable or other, or belief that Doe # 7 was violating § 15-20A-11. *See id.*, doc. 148-3, Bone Dep. pp. 41-42.

153. Bone described the how he conducts his home compliance checks and, agreed that his searches of registrant residences were not pursuant to any "substantial cause," or "any other reason [than the fact they are sex offenders] whatsoever." *See id.* pp. 94-96.

154. Based on the explicit admissions of Alabama law enforcement officials responsible for enforcing ASORCNA, it is clear that law enforcement conducts random, warrantless, uninvited and unannounced searches of ASORCNA registrants' homes.

155. The defendants have attempted to sanitize the actions and words of, for example, Investigator Bone of the Chilton County Sheriff's Office. *See Doe v. Marshall*, doc. 158 at 4, 7-9.

156. The transcript of Bone's sworn testimony from Doe 7's July 17, 2018 preliminary hearing regarding the charges recently brought against Doe 7 by Bone and Chilton County prosecutors reveal unlawful motives. *See id.*, Ex. 6 (submitted under seal).

157. Two things become clear from Bone's July 17 testimony: (1) Bone and the prosecutor interprets ASORCNA in a retrospective manner to justify their

violations of the Fourth Amendment and selective prosecutions (*see id*. at 3-8, 33-34) and, (2) the judge's actions may provide an indication as to why officers and prosecutors fail to appreciate one's constitutional rights. *See id*., Ex. 6 at 19-21, 37-38.

158. But through Bone's testimony at Doe 7's preliminary hearing, the Court can clearly find that his enforcement tactics, as ASORCNA's residency restrictions, is nothing short of lawless. *See id*. at 8-19, 22-33.

159. The undisputed facts are that registrants like Mr. Doe 7 are being selectively arrested and prosecuted for violating ASORCNA at the whims of officers, prosecutors and judges.

160. After Doe 7's July 17 preliminary hearing, he was not jailed, but allowed to remain out on bond.

## Bone's October 15, 2018 Third Arrest of Doe 7

161. **Mr. Doe 7 is currently in Chilton County jail**. He has been languishing in jail since October 15, 2018.

162. On the evening of October 15, 2018, Doe 7 was driving home. He was stopped by Chilton County sheriff deputies and arrested for an outstanding bond revocation warrant issued on July 17, 2018, just minutes **after** his preliminary hearing and release on bond.

163. The July bond revocation warrant was issued because of Doe 7's April 13, 2018 charge for allegedly being at his friend's home in violation of ASORCNA.

164. Mr. Doe 7, through one of his lawyers, has filed motions to reinstate his bond and sought his release from jail pending grand jury indictment and perhaps, trial. The same district court judge who presided over the preliminary hearing has required that Investigator Bone approve Doe 7 prospective address prior to releasing him on bond.

165. Doe 7's prospective address is the same lot he has been living on for years and most recently. It is compliant per ASORCNA and has been registered by Doe 7 and approved by Bone.

166. Investigator Bone has yet to provide approval of the address to the district Court.

167. Mr. Doe 7 currently wishes to supplement his fixed income by working periodically as a general construction laborer. ASORCNA's employment zones of exclusion prevent him from knowing where he may lawfully work.

168. Doe 7 has, since August 1, 2017, turned down jobs when he knows the location is restricted by ASORCNA, but also has turned down jobs when he is unsure whether locations are restricted or not.

169. Doe 7 currently carries an Alabama driver's license branded with CRIMINAL SEX OFFENDER on its face. He is offended by the label and wishes to have the brand removed from his license now.

170. Because of the location of Doe 7's residence, he registers with his county sheriff's office only and pays $10 during each registration event.

## COUNT 1
**Violation of Ex Post Facto Clause of the United States Constitution**

33

171. Plaintiff realleges the facts and allegations set forth in paragraphs 1-170 above and this Court's findings in *McGuire I*, 83 F. Supp. 3d 1231 and *Doe v. Marshall*. Doc. 164 at 28-29.

172. "The Constitution of the United States, article 1, section 10, lays several restrictions on the authority of the Legislatures of the several states; and, among them, 'that no state shall pass any ex post facto law.'" *Calder v. Bull*, 3 U.S. 386, 389.

173. An ex post facto law includes, but is not limited to, "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. *Calder v. Bull*, 3 U.S. at 390.

174. In 2003, the Supreme Court in *Smith v. Doe*, armed with misinformation and disinformation regarding sex offender recidivism, opined that a state is capable of "conclud[ing] that a conviction for a sex offense provides evidence of substantial risk of recidivism." 538 U.S. 84, 103.

175. As a result of the *Smith* Court's findings, this Court, *four years ago* noted, "It is important to again reiterate the lack of clarity that now permeates the study of recidivism. Accordingly, the court follows precedent in deferring to state findings regarding recidivism, but does so very skeptically." *McGuire I*, Op. at 1265 n. 35.

176. This Court, armed with the most recent, soundest empirical evidence on sex offender recidivism to date, has recently acknowledged the overwhelming clarity in credible sex offender recidivism. *Doe v. Marshall*, Op., doc. 164 at 29. Current research illuminates the falsity of long-held beliefs that persons who have committed sexual offenses are life-long threats of high rates of recidivism. *See id.*

34

177. Deference to Alabama's legislative "findings" on sex offender recidivism now requires consideration of the State's now, obsolete conclusions. *Cf. McGuire I*, Op. at 1265 n. 35.

178. Mr. McGuire poses no threat whatsoever to the public and children. He poses "no more of a threat to the public than the average man walking down the street." *Doe v. Marshall*, Op. doc. 164 at 29.

179. There are thousands of ASORCNA registrants, like Mr. McGuire, who have nevertheless been retroactively captured under the punitive strictures of ASORCNA, even though those registrants' pre-ASORCNA convictions did not involve minors, and even though, like Mr. McGuire, they have remained offense-for decades prior to and since the enactment of ASORCNA. *See id.*

180. But because ASORCNA (2011, as amended), captures registrants like McGuire, it runs afoul of the *Ex Post Facto* Clause of the United States Constitution.

181. Plaintiff contends that individual provisions of ASORCNA, standing alone, serve to punish him, post-enactment of the statute and well after he has atoned for his crime. But it is the cumulative effects of ASORCNA that punish retroactively-captured registrants and trap them, forever, in the "most comprehensive debilitating sex offender scheme in the land." *See McGuire I*, 83 F. Supp. 3d at 1236; *id.* at 1267 ("*Smith* and *W.B.H.* were dealing with schemes with only a fraction of the features embodied in ASORCNA. Thus, the cumulative effects of ASORCNA's provisions will be examined.").

35

182. ASORCNA has made it impossible for McGuire and thousands of registrants to "return to their communities" after conviction. The statute's residency and employments restrictions and requirements effectively banish offenders from the community. The statute requires that McGuire and many registrants be publicly shamed each time they move to a neighborhood by distributing community notification fliers. Registrants are also subject to the State's dissemination of private information about them over the internet. The constant in-person reporting, residency and employment restrictions of ASORCNA are more stringent than many, if not most parole requirements. ASORCNA's fee requirements are effectively fines for registrants who frequently change addresses, have multiple addresses, work and live in multiple Alabama counties or are homeless. These features of ASORCNA resemble traditional forms of punishment such as banishment, public shaming and fines.

183. The statute imposes a panoply of affirmative disabilities or restraints on registrant liberties including, but not limited to, restrictions on residency, employment, travel, excessive reporting, along with excessive fee payment requirements. *See e.g. McGuire I*, Op., at 1258 ("[T]he court finds that ASORCNA's residency, employment, and travel restrictions, as well as its in-person registration requirements, rise beyond the minor and indirect impositions … in favor of the conclusion that [the] provisions are so punitive either in purpose or effect as to override Alabama's intent that it be a civil regulatory statute.").

184. The State seeks to deter sex offenders from recidivist activity. Ala. Code § 15-20A-2(1).   Because sex offenders like Mr. McGuire and thousands of others retroactively captured pose no discernable risk of recidivism, there is only one explanation for the State's continued requirement that McGuire and those similarly situated adhere to ASORNA—retribution for past crimes.

185. The credible social science involving sex offender recidivism is now clear.  Both Mr. McGuire and the State agree that he and "most individuals convicted of a sexual offense will be no more likely to commit another sexual offense than the rate of spontaneous 'out-of-the-blue' sexual offenses in the general population." *Doe v. Marshall*, Op. at 29.  Because of this fact, there is no basis, rational or other, for the State to protect children from thousands of registrants, like Mr. McGuire, who pose no discernable threat to children. *See McGuire I* at 1264 ("[R]egistrants who pose no discernable threat to public safety are subject to ASORCNA, notwithstanding evidence of post-conviction rehabilitation and subsequent years of non-offending.).

186. ASORCNA is excessive with respect to Alabama's stated nonpunitive objective. "It supplements in-person registration, registration fees, residency and employment restrictions, and community-notification measures with additional provisions creating a scheme that regulates sex offenders far beyond the scheme in any other state. For example, excluding legislation aimed at sexually violent predators, no other state has a scheme whereby sex offenders are retroactively regulated for life through residency, employment, and travel restrictions …[t]he provisions are,

37

especially considered *in toto*, in excess of every other scheme operating across the country…" *McGuire I*, at 1268.

187. Because of the cumulative, punitive effects of ASORCNA, coupled with required lifetime adherence to the statute for those who pose no threat to the public, the provisions of ASORNA that violate the *Ex Post Facto Clause*, Article I, Section 10 of the United States Constitution and which application should be stricken for registrants whose convictions were prior to the statute's enactment include:

    a.  Ala. Code §§ 15-20A-1 *et seq.*

**COUNT 2**
**Violation of the Due Process Clause of the United State Constitution**
**Ala. Code § 15-20A-11(d)**
**As-Applied Challenge**

188. Plaintiff realleges the facts set forth in paragraphs 1-170 above and this Court's rulings in *Doe v. Marshall*, doc. 164.

189. "The Constitution "protects the sanctity of the family." *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977). So "when the government intrudes on choices concerning family living arrangements," *id.* at 499, the government's action must pass strict scrutiny, *see Reno v. Flores*, 507 U.S. 292, 302 (1993).

190. ASORCNA's prohibition against residing with minors substantially interferes with Plaintiffs' ability to maintain intimate associations with immediate and extended family.

191. Plaintiff was not convicted for sexual crimes against a minor or a child. His 1985 victim was an adult female.

192. ASORCNA does not provide for any individualized consideration before restricting Plaintiffs' ability to associate with close or extended family members.

193. Plaintiff has a brother who would gladly have him to live in his ASORCNA-compliant home. ASORCNA prohibits Plaintiff from living or having a single overnight visit with his brother because his minor nieces live in the home coupled with its complete proscription on registrants' cohabitation with nieces and nephews, even at the most remote residences situated outside of exclusion zones.

194. Ala. Code § 15-20A-11(d) of ASORCNA violates the fundamental rights to family association of Mr. McGuire because it prohibits living arrangements with his nieces and because it is not narrowly tailored to serve a compelling state interest.

195. ASORCNA's restrictions on minor co-habitation apply *for life* to registrants who have never harmed minors and those who, due to decades of offense-free living pose-conviction and release from prison, pose no threat to the public and especially children.

196. As alternatives, the State could require registrants who have harmed minors to be subject to minor cohabitation restrictions. The State can also provide risk-based assessments to determine registrant risk of recidivism. Tiers can be created to classify offenders based on risk level (*e.g.* low, medium, high) and provisions may be tailored accordingly. And lifetime adherence to these restrictions can be aimed at those who pose lifetime risks. Otherwise, temporal adherence (*e.g.* 5, 10, 25 years) can be tailored based on offense and risk level.

197. This Court, in *Doe v. Marshall* held that Plaintiffs' lacked standing to challenge

Ala. Code § 15-20A-11(d). Doc. 164 at 14. The Court has indicated however, that it is unconstitutional for the State to proscribe registrants like Mr. McGuire from cohabitating with his minor nieces, who live with his brother in an ASORCNA-compliant home. *Id.* at 42.

198. The provisions of ASORCNA that impermissibly infringe upon Plaintiff's substantive due process rights to intimate familial associations, in violation of his First and Fourteenth Amendment rights include:

   a.   Ala. Code § 15-20A-11(d).

**COUNT 3**
**Void for Vagueness—Employment Restrictions-Ala. Code § 15-20A-13**
**Facial Challenge**

199. Plaintiff realleges the facts and allegations set forth in paragraphs 1-170 above and this Court's findings in *Doe v. Marshall*. Doc. 164.

200. Plaintiff and thousands of ASORCNA registrants will continue to suffer harm as a result of ASORCNA's employment restrictions.

201. A basic principle of procedural due process is that laws are void for vagueness if their prohibitions are not clearly defined. *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1319 (11th Cir. 2017) (en banc). "Due process encompasses the concepts of notice and fair warning, and at its core is the principle 'that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Indigo Room, Inc. v. City of Ft. Myers*, 710 F.3d 1294, 1301 (11th Cir. 2013) (quoting *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1349 (11th Cir. 2011)). So if a law either forbids or requires action, the

law cannot be so unclear "that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* (quoting *Mason v. Fla. Bar*, 208 F.3d 952, 958 (11th Cir. 2000)).

202. ASORCNA contains provisions that are facially invalid under vagueness doctrine because those provisions fail to provide a person of ordinary intelligence fair notice of what is required and what is prohibited under the statute or for which compliance is impossible.

203. Because there is no employment location preapproval process, registrants have no way to know whether accepting, maintaining and volunteering for employment runs afoul of the statute. Ala. Code § 15-20A-13 does not specify how officers decide that registrants' prospective employment is complaint per ASORCNA, so it gives "virtually complete discretion" to officers on their beats the ability to decide if registrants like McGuire violate ASORCNA's employment restrictions when accepting *ad hoc*, intermittent or even permanent employment or volunteer work. *See Kolander v. Lawson*, 461 U.S. at 353, 358.

204. ASORCNA's employment restrictions chill Plaintiff and thousands of able-bodied registrants from seeking and accepting employment.

205. Because registrants who have never harmed minors and registrants who have been offense-free in the community for decades after conviction for crimes requiring adherence to ASORCNA are captured in the State's employment restrictions, the provisions lack proper tailoring.

206. As alternatives to the ASORCNA's employment zones of exclusion, the State could require registrants who have harmed minors to be subject those provisions. The State can also provide risk-based assessments to determine registrant risk of recidivism. Tiers can be created to classify offenders based on risk level (*e.g.* low, medium, high) and provisions may be tailored accordingly. And lifetime adherence to these restrictions can be aimed at those who pose lifetime risks. Otherwise, temporal adherence (*e.g.* 5, 10, 25 years) can be tailored based on offense and risk level.

207. The provisions of ASORCNA that are void for vagueness, because they are impossible to comply with and leave violations to the discretion of law enforcement include but are not limited to:

   a. the prohibitions on employment in ASORCNA's employment exclusion zones, Ala. Code § 15-20A-13.

### COUNT 4
### Violation of First, Fourteenth Amendments— Ala. Code §§ 15-20A-11; -13; -18
### Overbreadth – Facial and As-Applied Challenge

208. Plaintiff realleges the facts and allegations set forth in paragraphs 1-170 above and this Court's rulings in *Doe v. Marshall*, doc. 164.

209. Most registrants of ASORCNA pose no more threat to the public than the "average man walking down the street." *Doe v. Marshall*, doc. 164 at 28-29.

210. Laws that "restrict or burden the exercise of First Amendment rights must be narrowly drawn." *Doe v. City of Albuquerque*, 667 F.3d 111 (10th Cir. 2012)

ASORCNA registrants do not lose their First Amendment rights simply because they are registrants of the statute.

211. "[T]time, place, and manner regulation[s] [must] contain adequate standards to guide the official's decision and render it subject to effective judicial review." *Thomas v. Chicago Park Dist.,* 534 U.S. 316, 323.   Even a facially content-neutral time, place, and manner regulation may not vest public officials with unbridled discretion over permitting decisions. *See Shuttlesworth v. Birmingham,* 394 U.S. 147, 150-51 (1969); *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 130-31 (1992). Excessive discretion ... is constitutionally suspect because it creates the opportunity for undetectable censorship and signals a lack of narrow tailoring. *See id.; Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358, 1362 (11th Cir. 19990; *Miami Herald Pub. Co. v. City of Hallandale,* 734 F.2d 666, 675 (11th Cir. 1984). Therefore, time, place, and manner regulations must contain "narrowly drawn, reasonable and definite standards," *Thomas,* 534 U.S. 316, 323, "to guide the official's decision and render it subject to effective judicial review," *id.* at 323.

212. Plaintiff contends that the ASORCNA's combined residency zones of exclusion provide that registrants establish residence at their places of worship if they attend "habitually or systematically." The State of Alabama agrees. *See McGuire v. Strange,* Appeal No. 15-10958 (11th Cir.), Appellees Aug. 9, 2017 Supp. Br. at 17 ("[If] a sex offender is habitually or systematically at a [church], then yes, that sex offender must register his presence there.").

43

213. Moreover, ASORCNA, on its face, provides an example of how McGuire and thousands of registrants commit felonies by their habitual or systematic attendance at church. Ala. Code §§ 15-20A-11; -4(20) ("The term reside includes, but is not limited to, spending more than four hours a day at a [church] on three or more consecutive days; spending more than four hours a day at a [church] on 10 or more aggregate days during a calendar month; or spending any amount of time at the [church] coupled with statements or actions that indicate an intent to live at the [church] or to remain at the [church] for the periods specified in this sentence. A person does not have to conduct an overnight visit to reside at a [church].").

214. There are likely thousands of ASORCNA registrants, like McGuire, who attend or wish to attend worship services at a church. *See e.g. Martin v. Houston*, 176 F. Supp. 3d 1286, 1290 (2015 M.D. Ala. Watkins, C.J.). ("Plaintiff Ricky Martin, who serves as pastor of the Triumph Church in Clanton, Alabama, welcomed ASORCNA registrants into his congregation.").

215. For the substantial number of houses of religious worship that maintain childcare facilities, habitual or systematic attendance by ASORCNA registrants violates Ala. Code § 15-20A-11 in its entirety.

216. As Mr. McGuire complains, working part-time, or volunteering for any ministerial work on a habitual or systematic basis is prohibited by ASORCNA's employment zones of exclusion. Ala. Code § 15-20A-13.  McGuire's acceptance of a full-time job at the church he attends is *per se*, a change of residence.  And for those churches

who have childcare facilities, employment is completely proscribed for all registrants.

217. It is beyond conjecture that Mr. McGuire's exercise of his religious beliefs or associations with a church groups while violating ASORCNA restrictions expose him to multiple *simultaneous* felonies, including felonies for violating residency and employment restrictions, and reporting requirements. Ala. Code § 15-20A-11; -13; -10(b).

218. The State could exempt church attendance and participation in ministry activities from ASORCNA's combined zones of exclusion provisions.

219. This Court has held that ASORCNA's branded identification requirements unconstitutionally compels registrant speech. *Doe v. Marshall, doc. 164* at 16. Thus, Ala. Code § 15-20A-18 "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662.

220. ASORCNA's residency and employment zones of exclusion and branded identification requirements apply *for life* to registrants who have never harmed minors and those who, due to decades of offense-free living pose-conviction and release from prison, pose no threat to the public and especially children. Thus the provisions are not narrowly tailored.

221. As alternatives to ASORCNA's residency, employment and branded identification restrictions and requirements, the State could require registrants who have harmed minors to be subject those provisions. The State can also

provide risk-based assessments to determine registrant risk of recidivism. Tiers can be created to classify offenders based on risk level (*e.g.* low, medium, high) and provisions may be tailored accordingly. And lifetime adherence to these restrictions can be aimed at those who pose lifetime risks. Otherwise, temporal adherence (*e.g.* 5, 10, 25 years) can be tailored based on offense and risk level.

222. Additional alternatives to the State's branding of registrant identification could be that the State use a single letter or, not brand Mr. McGuire and similarly situated (indiscernibly low-risk) registrants' identification at all. Thus, Taylor has not chosen a designation that "allows officers to identify" registrants by the least restrictive means. Hal Taylor has had since February 11, 2019 to send basic electronic communication to ALEA offices, instructing them to exchange branded identification for ones not branded upon registrant request. Instead, he continues to force registrants to carry an unconstitutional brand on their identification when, like in McGuire case, it is the only form of identification registrants carry which provides proof of age and address.

223. "Freedom of association has been constitutionally recognized because it is often indispensable to effectuation of explicit First Amendment guarantees." *Moore v. City of Cleveland*, 431 U.S. at 535, 536 (*citing Loving v. Virginia,* 388 U.S. 1, 12 (1967) (freedom to marry person of another race); *Griswold v. Connecticut,* 381 U.S. 479 (1965); *Eisenstadt v. Baird,* 405 U.S. 438 (1972) (right to use contraceptives); *Pierce v. Society of Sisters,* 268 U.S. 510, 534-535 (1925) (parents' right to send children to private schools); *Meyer v. Nebraska,* 262

U.S. 390 (1923) (parents' right to have children instructed in foreign language)).

224. ASORCNA's minor cohabitation rule, on its face, proscribes a substantial amount of registrant association with minor family members and, chills otherwise lawful registrant association with close, minor family members.

225. Because ASORCNA, as a statutory scheme applies completely retroactively and indiscriminately, including to those who have never harmed minors and those who pose no threat to the public and children, the statute impermissibly infringes upon Plaintiff's and registrants' First Amendment and other important liberties should be stricken in its entirety, save for its application to persons who, after July 1, 2011, are deemed to be sexually violent predators pursuant to Ala. Code § 15-20A-19. Alternatively, the provisions that are overbroad in violation of Plaintiff's and similarly situated registrants' First Amendment liberties include, but are not limited to:

   a.  Ala. Code §§ 15-20A-8 (State-imposed internet publication);

   b.  -11 or, alternatively, -11(d) (residential zones of exclusion);

   c.  -13 (employment zones of exclusion);

   d.  -18 (branded identification requirements); and,

   e.  -21 (State-imposed community notification fliers).

## COUNT 5
### Violation of Fourteenth Amendment Equal Protection
### Facial and As-Applied Challenge

226. Plaintiff realleges the facts and allegations set forth in paragraphs 1-170 above.

227. Plaintiff and scores of Alabama citizens who are subject to ASORCNA are homeless.

228. ASORCNA creates a broad class of similarly situated persons, all who are equally subject to reporting requirements and payment of fees.

229. State-created classes should be treated at minimum, as quasi-suspect and, laws which effect class members' liberties should be subject to heightened scrutiny.

230. Homeless registrants of ASORCNA are subject to the same residential distance restrictions as registrants with homes. Homeless registrants are no more mobile than registrants with homes, as nothing prevents any registrant from walking or driving about cities and towns across Alabama, as long as the movement complies with restrictions and requirements contained in ASORCNA's residency, employment, reporting and travel provisions.

231. Homeless registrants are treated in a disparate fashion in relation to similarly situated registrants who are fortunate enough to afford or find compliant housing.

232. For no reason other than they are homeless, ASORCNA requires homeless registrants to register weekly and quarterly, totaling a minimum of fifty-six (56) registration events per year. Meanwhile, registrants who live in homes are required to register a minimum eight (8) times per year if they are "in town" registrants and, only (4) times per year if they are "county only" registrants.

233. ASORCNA requires homeless registrants to pay $10 at each required registration event.

234. Homeless registrants are required to pay a minimum of $520 per year. County-only registrants are only required to pay a minimum of $40 annually.

235. For the sole reason that in-town registrants' residence may be situated one mile, one foot or indeed, one inch on the city side of a city-county line, they are required to register with both city and county law enforcement—double the registration events of county-only registrants. A "county-only," serial pedophile must register only with the county agency. Meanwhile and in-town registrants convicted of indecent exposure, an Alabama misdemeanor, must register with city *and* county law enforcement.

236. In-town registrants are required to pay much less than homeless registrants, for the sole reason that their residence may be situated one mile, one foot or indeed, one inch on the city side of a city-county line. These registrants pay double the fees of county only registrants because ASORCNA requires them to pay a $10 fee to city and county law enforcement offices during each of their eight (8) registration events.

237. Local law enforcement has, for years since the enactment of ASORCNA, communicated inter-agency, the registration information of registrants. *See e.g. Doe v. Marshall* doc. 148-13, Persky Dep. at 12-13 (describing how Montgomery Police department uses mapping tools to confirm compliant addresses and shares the information to Montgomery County Sheriff's Office.).

238. Relief provisions are only available to certain registrants of ASORCNA. The criteria for relief from ASORCNA's residency and employment restrictions are

unavailable to many registrants, like the Plaintiff, who pose no threat to the community. ASORCNA provides minimal provisions for relief for some registrants, while failing to provide even the possibility for relief for others. The statute offers no individualized assessments allowing for a determination of future risk for any registrant.

239. ASORCNA's disparate treatment of homeless and in-town registrants with more stringent registration and fee requirements lack even a rational basis.

240. The provisions of ASORCNA that violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution include, but are not limited to:

    a.  The homeless registration and fee payment provisions of Ala. Code §§ 15-20A-12; -22(a);

    b.  The "dual registration" and fee payment requirements of Ala. Code §§ 15-20A-10; -4(12); -22 and,

    c.  The relief provisions of Ala. Code §§ 15-20A-23; -24; -25; -28

## COUNT 6
### Violation of Fourth, Fourteenth Amendments—Individual Capacity-Jeremy Jones

241. Plaintiff realleges the facts and allegations set forth in paragraphs 1-170 above and this Court's rulings in *Doe v. Marshall*, doc. 164.

242. Without a warrant, officers may not physically intrude on a home, or the area immediately surrounding and associated with the home, to gather evidence. *Doe v. Marshall*, Op., doc. 164 at 41 n. 10 (*citing Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018); *Moore v. Pederson*, 806 F.3d 1036, 1044–45 (11th Cir. 2015).).

243. On September 1, 2017, MPD officer Jones conducted an unlawful search of Mr. McGuire by demanding that he show him mail or, produce clothing inside McGuire's home, under explicit threat of arrest, jailing and potential prosecution under felony penalty. *See Doe v. Marshall*, doc. 148-6 (video).

244. Officer Jones does not deny that he entered the gated back yard of Mr. McGuire's residence on prior occasions and knocked on back windows and doors without a warrant, as described, *supra. See id.*, doc. 148-4 at 4-5.

245. Officer Jones did not possess a warrant for any of his unlawful searches of Mr. McGuire or his residence. *Id.*, doc. 148-4 at 4.

246. Officer Jones' searches of Mr. McGuire and his residence on or about August 24 and September 1, 2017 were unlawful as they violate the clearly established Fourth and Fourteenth Amendments of the United States Constitution. *See Moore v. Pederson*, 806 F.3d 1036, 1044-45 (11th Cir. 2015) (Clearly establishing that "*Terry*-like" stops conducted upon citizens at their homes violate Fourth Amendment protections against illegal searches and seizures.); *See also Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018).

247. Qualified immunity is not appropriate, given Jones' unlawful search of Mr. McGuire.

248. "[I]t is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bivens v. Six Unknown*

*Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396 (1971)(*citing*

*Bell* v. *Hood*, 327 U.S. 678, 684 (1946)).

## Request for Relief

**WHEREFORE**, Plaintiffs request that this Court:

a. Issue a judgment pursuant to 28 U.S.C. §§ 2201-2202, declaring that the ASORCNA, Ala. Code § 15-20A-1 *et seq.* is unconstitutional, as it violates the *Ex Post Facto* Clause of the United States Constitution and, issue a preliminary injunction against the State defendants pursuant to Fed. R. Civ. P. 65, enjoining the State's enforcement of its provisions upon registrants whose convictions predate the statute's enactment.

b. Issue a judgment pursuant to 28 U.S.C. §§ 2201-2202, declaring that the ASORCNA proscription on minor cohabitation, Ala. Code § 15-20A-11(d), is unconstitutional as applied to Plaintiff, because the provision violates his fundamental rights to intimate familial associations and, issue a preliminary injunction against the State defendants pursuant to Fed. R. Civ. P. 65, enjoining the State's enforcement of the provision.

c. Issue a judgment pursuant to 28 U.S.C. §§ 2201-2202, declaring that the ASORCNA provisions, Ala. Code §§ 15-20A-13, are facially void in violation of the Due Process Clause of the Fourteenth Amendment due to vagueness and, issue a preliminary injunction against the State defendants pursuant to Fed. R. Civ. P. 65, enjoining the State's enforcement of the provisions.

d. Issue a judgment pursuant to 28 U.S.C. §§ 2201-2202, declaring that the ASORCNA provisions, Ala. Code §§ 15-20A; -8; -11; -13; -18; -21, are overbroad, both facially and as-applied to Plaintiff, in violation of the First and Fourteenth Amendments and, issue a preliminary injunction against the State defendants pursuant to Fed. R. Civ. P. 65, enjoining the State's enforcement of the provisions.

e. Issue a judgment pursuant to 28 U.S.C. §§ 2201-2202, declaring that the ASORCNA provisions, Ala. Code §§ 15-20A-12, in conjunction with -22; -10, in conjunction with -4(12), -22; -23; -24; -25; and, -28 violate the Equal Protection Clause of the Fourteenth Amendment both facially and as-applied to Plaintiff.

f. Because Defendant Taylor has decided not to send a simple communication to ALEA offices allowing registrants who wish to exchange their branded identification and specifically denied Plaintiff's efforts to exchange his branded identification for one that is non-branded, issue and independent, preliminary or alternatively, permanent injunction against the State defendants, enjoining them from enforcing Ala. Code § 15-20A-18 against Plaintiff and similarly situated registrants of ASORCNA pursuant to this Court's findings and judgment in *Doe v. Marshall.*

g. At the appropriate time, issue a judgment pursuant to Fed. R. Civ. P. 56, holding that Jeremy Jones of the City of Montgomery, Alabama Police Department, individually, violated Plaintiff's Fourth and Fourteenth Amendment rights on or about August 24 and/or September 1, 2017.

h. Retain jurisdiction of the matter and issue permanent injunctions against the State defendants at the appropriate time as to sub-sections (a)-(f) in Plaintiff's request for relief, *supra.*

i. Award damages in favor of Plaintiff and against Jeremy Jones in his individual capacity.

j. Award Plaintiff his reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988.

k. Order any further relief in favor of Plaintiff and against Defendants that the Court deems appropriate.

Respectfully submitted this 11th day of March 2019.

Joseph Mitchell McGuire (MCG044)
*McGuire & Associates, LLC*
31 Clayton Street
Montgomery, Alabama 36104
334-517-1000 (voice)
334-517-1327 (fax)
jmcguire@mandabusinesslaw.com

*Attorney for Michael A. McGuire*

## **VERIFICATION**

Before me, the undersigned notary, on this day personally appeared Michael A. McGuire, the affiant, a person whose identity is known to me.  After I administered an oath to affiant, affiant testified:

"My name is Michael A. McGuire.  I have read the Complaint.  The facts and allegations stated in it with regard to me are true and correct to the best of my knowledge."


_Michael A. McGuire_
Michael A. McGuire


SWORN TO and SUBSCRIBED before me by Michael A. McGuire on March 6, 2019.


_Paula J. Jordan_
Notary Public in and for
the State of Alabama

exp. 6/24/19

## **VERIFICATION**

Before me, the undersigned notary, on this day personally appeared John Doe # 7, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

"My name is John Doe # 7. I am currently in jail for violating the residency and reporting provisions of ASORCNA. I have read the Complaint. The facts and allegations stated in it with regard to me are true and correct to the best of my knowledge."

*John Doe 7*
John Doe # 7

SWORN TO and SUBSCRIBED before me by John Doe # 7 on March 8, 2019.

exp. 6/24/19

Notary Public in and for
the State of Alabama